

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 08 2024

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FAZAIL AZIZAN<br><br>            Claimant.<br><br>v.<br><br>LYFT, INC<br><br>            Respondent | No. **1:24-CV-1491** |

# COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff Fazail Azizan (hereafter "Plaintiff") brings this action on behalf of himself, and all others similarly situated against Defendants Lyft, Inc. (hereafter "Lyft") and Does 1-10 (hereafter "Doe Defendants") (collectively, "Defendants").

## SUMMARY OF CLAIMS

1. Plaintiff is a driver for Defendant Lyft, Inc. ("Lyft" or "Defendant"). He brings this action as a class action on behalf of himself and all other current and former Lyft drivers in Georgia, to recover lost wages, reimbursement of expenses, and other relief resulting from Lyft's willful decision to misclassify him and other drivers as independent contractors.

2. Plaintiff alleges that Lyft has violated and continues to violate the Fair Labor Standards Act ("FLSA"), the Georgia Labor Code, and Georgia's Unfair Competition Law ("UCL"), which protect Plaintiff and other drivers from being misclassified. These violations include the failure to: (1) reimburse Plaintiff for his expenses, (2) pay overtime, (3) pay minimum wage, (4) provide itemized wage statements, and (5) keep accurate payroll records.

3. Plaintiff brings his claims under the Georgia Labor Code, Wage Order, and the UCL, on behalf of all Lyft drivers who worked in Georgia between July 2, 2016, through the date final disposition of this action (the "Class").

4. Plaintiff also brings claims under the FLSA, 29 U.S.C. §§ 201 et seq. and 29 U.S.C. § 216(b) on behalf of all Lyft drivers who worked in Georgia between the period beginning 3 years prior to the filing of this action through the date of its final disposition (the "Collective")

5. Like all Lyft drivers, Plaintiff was required to consent to Lyft's Terms of Service ("TOS") when he signed up to become a Lyft driver. And like the vast majority of Lyft drivers, Plaintiff did not opt out of the arbitration clause contained in Section 17 of the TOS.

## THE PARTIES

6. PLAINTIFF Fazail Azizan is a resident of Atlanta, Fulton County, Georgia. He has been a Lyft Driver since 2016, operating in Georgia.

7. Defendant Lyft owns and operates the Lyft ride sharing service and is authorized to and does conduct business throughout the State of Georgia. Defendant maintains a registered office at 289 S. Culver Street Lawrenceville, GA, 30046-4805 and its registered agent in Georgia is CT Corporation System.

Plaintiff alleges on information and belief that: (1) each Defendant acted in all matters relevant to this action as the agent of the other Defendant and carried out joint business plans and operations; and (2) the acts and omissions of each Defendant are legally attributable to the other Defendant.

## FACTUAL BACKGROUND

A. Plaintiff Is an Employee of Lyft Under the FLSA and Georgia Law

8. Lyft is an App-based transportation provider that has been based in San Francisco, California since 2012. In March 2019, Lyft's shares were offered to the public and now trade on the NASDAQ stock exchange.
9. Lyft's business. Lyft provides riders with transportation by assigning Lyft drivers to riders using a mobile phone application (the "Lyft App").
10. The driver then transports the rider, and the rider pays Lyft for the service with a credit card via the Lyft App.

11. Lyft sets the fare to be paid by the rider and communicates it to the rider via the App.

12. On information and belief, Lyft pays the driver a percentage of the ride fare plus 100% of any added tip, with Lyft keeping the rest of the fare for itself.

13. The work that Lyft drivers perform is in the usual course of Lyft's business – indeed, providing driving services is Lyft's business.

14. Lyft says that it "is one of the largest and fastest growing multimodal transportation networks in the United States." See Lyft, Inc., Securities and Exchange Commission Form S-1 Registration Statement,2 at p. 1 (March 1, 2019) ("S-1 Statement").

15. Lyft drivers, including Plaintiff, provide the service that Lyft sells to the public.

16. Lyft says that it participates in the "transportation . . . market," and describes its business as "singularly focused on revolutionizing transportation." S-1 Statement at pp. 3-4.

17. Lyft earns money by providing its customers with a ride from point A to point B – a service that is wholly dependent on Lyft drivers, like Plaintiff.

18. Lyft's "business depends largely on [its] ability to cost-effectively attract and retain qualified drivers[.]" S-1 Statement at p. 10.

19. Lyft is not merely a platform or uninterested bystander between drivers and riders. As this Court has found, "Lyft concerns itself with far more than

simply connecting random users of its platform. It markets itself to customers as an on-demand ride service, and it actively seeks out those customers. It gives drivers detailed instructions about how to conduct themselves. Notably, Lyft's own drivers' guide and FAQs state that drivers are 'driving for Lyft.'" Cotter v. Lyft, Inc., 60 F. Supp. 3d 1067, 1078 (N.D. Cal. 2015).

20. As part of Lyft's requirements, Plaintiff received training in how to interact with riders, as well as Lyft's expectations and practices.

21. Lyft also screens every driver, including Plaintiff, "before they are permitted to drive on [its] platform, starting with professional third-party background and driving record checks." See S-1 Statement at p. 148.

22. Lyft can terminate drivers' right to provide driving services for violating one or more of the rules that Lyft imposes by contract.

23. Plaintiff lacks business autonomy. Plaintiff is not engaged in an independently established business. Lyft requires riders to request rides and pay drivers through the Lyft App. Lyft tells drivers not to solicit riders' contact information and to reject riders' requests to drive them outside of the Lyft App. Plaintiff is dependent on Lyft to identify riders for him, he may not hire employees to assist him in providing services for Lyft, and he does

not need to possess any particular or special skills other than those required to obtain a driver's license.

24. By working for Lyft, Plaintiff has not independently made the decision to go into business for himself. Lyft has unilaterally determined that drivers are an independent contractor while precluding them from taking the usual steps toward promoting and establishing independent businesses, such as forming business relationships with Lyft customers or otherwise promoting their services to the public.

25. Lyft also prohibits drivers from setting or in any way affecting the rates of pay for their own services. Lyft prohibits drivers from communicating with riders about future ride services.

26. Lyft requires drivers to use their own car or rent a car to provide rides for Lyft. Lyft requires that the car is not more than 8-9 years old, and it must pass automotive inspections as dictated by Lyft. Lyft also requires drivers, including Plaintiff, to "only provide Services Using the vehicle that has been reported to, and approved by Lyft.

27. Lyft controls the terms of employment. Lyft maintains uniform policies and terms of service with which all Lyft drivers, including Plaintiff, must comply. Once Plaintiff passed Lyft's initial requirements, he was able to work for Lyft for an indefinite period of time. However, Lyft may shut down

Plaintiff's access to the Lyft App for myriad reasons, thus preventing him from obtaining and responding to ride requests.

28.. Plaintiff performs work for Lyft by logging into the Lyft App, making himself available for rides and visible to Lyft users, which benefits Lyft. While logged in, Plaintiff regularly receives ride assignment quickly, sometimes receiving a new ride before completing the existing ride. Plaintiff rarely waits more than 15 minutes between ending one ride and receiving a new ride assignment. On an average day, Plaintiff typically waits 3-5 minutes between completing one ride and accepting the next assignment. Once Plaintiff receives an assignment, Lyft allows him 15 seconds to accept the assignment. On information and belief, until the beginning of 2018, Lyft required that drivers accept at least 90% of ride assignments to avoid being terminated. Now, Lyft "use[s] acceptance rates to determine driver eligibility for certain features and help keep passenger wait times short." Lyft Help Center, "Acceptance Rate", available at https://help.lyft.com/hc/en-us/articles/115013077708-Acceptance-rate (last accessed July 1, 2019). Lyft calculates drivers' acceptance rates by adding the number of rides a driver completes to the number of rides cancelled by the rider and dividing that number by the total number of ride assignments shown to the driver. Lyft explains that a driver's acceptance rate may decrease due to missed

assignments, such as when a driver lets the timer count down to zero, and by driver cancellations. Lyft drivers are under pressure to keep their acceptance rates high because Lyft bases eligibility for certain bonuses, awards, and other benefits in part on a driver's overall acceptance rate, such as the weekly "power drive bonus" – a weekly cash bonus given to drivers for completing a certain number of rides. Ridester, "An Introduction to the Lyft Power Driver Bonus", available at https://www.ridester.com/lyft-power-driver-bonus/ (last accessed July 1, 2019).

29. Lyft's manner of assigning rides – including the frequency of ride assignment messages, the very short window within which a driver can accept rides, and the threat of termination for failure to accept the vast majority of rides – prevents Plaintiff from engaging in personal activities while logged into the Lyft app.

30. Plaintiff logs out of the Lyft App at all times when he is not engaged in providing a ride for Lyft or making himself available for the next ride. When performing other types of work for Lyft, Plaintiff typically logs out of the App. For example, Plaintiff typically logs out when he pumps gas, performs vehicle maintenance and repairs, or uses the restroom. He schedules his work and personal activities to minimize the risk of missing ride assignments.

31. Lyft recognizes that drivers' time while logged into the App is not their own. Specifically, Lyft advises drivers to log out and take a break if they do not plan to accept ride assignments: "If you can't or don't want to accept ride requests, we recommend taking a break." Id.

B. Lyft's Misclassification of Drivers Violates the FLSA and Georgia Law.

32. Overtime and minimum wage. Lyft does not pay Plaintiff and drivers overtime for hours worked over eight in a day or over 40 in a week. Furthermore, although Lyft suffers or permits Plaintiff and drivers to log on to the Lyft App and make himself available to pick up rides, Lyft fails to pay them while they are logged on but not providing a ride. In this way, Lyft fails to pay the minimum wage for all hours actually worked and instead limits his drivers to a piece rate for each ride. Even limiting the calculation of minimum wage to the hours Plaintiff is engaged in providing a ride, Lyft fails to pay him a minimum wage for all hours worked.

33. Expense reimbursement. Plaintiff's and drivers' necessary expenses incurred as a direct consequence of the discharge of their duties for Lyft include mileage costs; car insurance; cell phone service to perform driving services, receive driving requests, and maintain required email and/or text message contact with Lyft; and car cleaning and repair to comply with Lyft

requirements, among other expenses. Lyft does not reimburse Plaintiff and drivers for workrelated expenses.

34. Wage statements and time records. Lyft's wage statements do not clearly itemize earnings in such a way that Plaintiff and drivers can readily identify whether they received all pay for which they are eligible under the law, such as hours worked, overtime, and minimum wages. Payroll records similarly fail to track all pay accurately.

35. Willfulness. Lyft has continued to classify Plaintiff and drivers as independent contractors notwithstanding that its classification policy has been the subject of several lawsuits.

36. Plaintiff hired an attorney to solve the issues by arbitration, but defendant has refused to do so. (see Exhibit A)

## COLLECTIVE ACTION ALLEGATIONS

37. Plaintiff brings his FLSA Claim for Relief on behalf of himself and all Collective members, defined above.

38. Lyft is liable under the FLSA for, inter alia, failing to properly compensate Plaintiff and the Collective. The FLSA claim in this lawsuit should be adjudicated as a collective action. Upon information and belief, there are

many similarly situated current and former Lyft drivers who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join it. Those similarly situated drivers are known to Lyft, are readily identifiable, and can be located through Lyft's records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings his claims on behalf of himself, and all others similarly situated pursuant to Federal Rule of Civil Procedure 23.

40. Numerosity. The Class is so numerous that joinder of all members is impracticable. Plaintiff is informed and believes, and on that basis alleges, that during the class period Lyft has employed thousands of persons who satisfy the definition of the Class.

41. Ascertain ability. The identity of Class members is ascertainable through Lyft's records or by public notice.

42. Commonality and Predominance. Common questions of law and fact exist as to members of the Class that predominate over any individualized questions, including the following:

- Whether Lyft drivers are employees or independent contractors; • Whether Lyft failed to reimburse Lyft drivers for work-related expenses; • Whether Lyft failed to pay Lyft drivers' overtime; • Whether Lyft failed to pay Lyft drivers the minimum wage for all hours worked; • Whether Lyft failed to provide itemized wage statements; • Whether Lyft kept accurate payroll records; • Whether Lyft failed to provide meal and rest breaks. • Whether Lyft's classification of Lyft drivers as independent contractors was willful; and • The proper measure of damages sustained by members of the Class.

43. Typicality. Plaintiff's claims are typical of Class members' claims. Plaintiff, like other Class members, was subjected to Lyft's policies and practices that violated the FLSA and Georgia law. Plaintiff's job duties and claims were and are typical of those of the Class members.

44. Adequacy. Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff's counsels are experienced in employment class actions and will fairly and adequately represent and protect the interests of the Class members.

45. Superiority. Class treatment would benefit the courts and Class members. Certification of the class would provide substantial benefits to the courts and Class members. The damages suffered by individual Class members are relatively small compared to the significant expense and burden of

individual prosecution of this litigation. In addition, class certification will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Lyft's practices.

## FIRST CLAIM FOR RELIEF
### (Minimum Wage Claim, 29 U.S.C. § 206

Brought by Plaintiff on Behalf of Himself and the Collective)

46. Plaintiff, on behalf of himself and all members of the Collective, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

47. At all relevant times, Lyft has been an employer and Plaintiff and the Collective have been employees under Georgia and Federal law entitled to the protections of the FLSA, the Georgia Labor Code, and Wage Order 9.

48. The foregoing conduct, as alleged, constitutes a violation of 29 U.S.C. § 206, which protects Plaintiff's and the Collective's right to earn a minimum wage and provides for damages and punishment for violations of that right.

49. In particular, the applicable minimum wage was $10.00 to $13.00 an hour, Plaintiff and the Collective regularly earned less than the minimum due to the significant deductions from pay that Lyft made for gasoline, car insurance, car financing, cleaning and maintenance, and cell phone usage, as well as the other expenses noted in above. These expenses resulted in hourly

rates of well less than the minimum wage based on the hours that Plaintiff and the Collective worked.

50. Although Plaintiff and the Collective periodically did not earn at least the minimum wage, Lyft had a policy and practice of failing and refusing to pay them minimum wages for all hours worked and thus violated and continue to violate the above-referenced minimum wage protections.

51. Plaintiff seeks the amount of the respective unpaid wages owed him and the Collective, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. §§ 201 et seq.and such other legal and equitable relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
## (Overtime Claim, 29 U.S.C. § 207
## Brought by Plaintiff on Behalf of Himself and the Collective)

52. Plaintiff, on behalf of himself and all members of the Collective, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.

53. The foregoing conduct, as alleged, constitutes a violation of 29 U.S.C. § 207, which requires overtime pay for time worked over 40 hours in a week.

54. Although Plaintiff periodically worked more than 40 hours in a week, including during the weeks beginning December 11, 2017, and December 18, 2017, Lyft had a policy and practice of failing and refusing to pay him and similarly situated drivers' overtime and thus violated and continues to violate the above-referenced overtime provisions of the FLSA.

55. Plaintiff seeks the amount of the respective unpaid wages owed him and the Collective, liquidated damages, attorneys' fees and costs pursuant to 29 U.S.C. §§ 201 et seq. and such other legal and equitable relief as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF

### (Minimum Wage Claim)

56. Plaintiff, on behalf of himself and all members of the Class, realleges and incorporates by reference all other paragraphs as if they were set forth again herein.
57. The foregoing conduct, as alleged, also constitutes a violation of the Georgia Labor Law, which similarly protect Plaintiff's and Class members' right to earn a minimum wage and provide for damages and punishment for violations of that right.
58. Plaintiff seeks the amount of the respective unpaid wages owed him and other Class members, liquidated damages, attorneys' fees and costs pursuant to Ga. Labor law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

a. That the court issue permanent and injunctive relief against Respondent and that Respondent, his officers, agents, representatives, servants, employees, attorneys, successors.

b. An award of damages, in an amount to be determined by the court.

c. Restitution in an amount to be determined by the court.

d. Reasonable attorneys' fees and costs of this action, including expert fees.

e. An Order certifying this case as a collective action in accordance with 29 U.S.C. 216(b) with respect to the FLSA claims set forth herein.

f. An Order declaring Defendant's violations of the FLSA were willful.

g. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective the full amount of damages and liquidated damages available by law;

h. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and An Order awarding such other and further relief as this Court. deems appropriate.

Dated: this 8 day of Apr 2024

Fazail Azizan

1407 cimarron parkway
Atlanta, Georgia 30350
678-387-9703